UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                      Case No. 19-20479

Terin Edwards,

                                           Sean F. Cox
    Defendant.                  United States District Court Judge

_____/

## **OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

Defendant Terin Edwards has moved to suppress evidence obtained after the car in which he was a passenger was stopped and searched by police officers. Edwards argues that the officers violated the Fourth Amendment by searching the car and detaining him after the purpose of the stop had been completed. Because of these alleged Constitutional violations, Edwards seeks to suppress the gun that was found under his seat and statements that he made while detained. For the reasons below, the Court will deny Edwards's motion.

## **PROCEDURAL BACKGROUND**

On July 16, 2019, a grand jury indicted Edwards on one count of felon-in-possession of a firearm. (ECF No. 12). On August 28, 2019, Edwards filed this motion to suppress all evidence obtained from a traffic stop that occurred on May 31, 2019. (ECF No. 18). Edwards argues that his continued detention, the manner in which he was detained, and the search of the car violated the Fourth Amendment. The Government responded, (ECF No. 21) and Edwards filed a reply. (ECF No. 24). The Court held an evidentiary hearing on October 11, 2019.

1

At the hearing, the Government called two witnesses: Sergeant Eric Hix and Deputy Paul Flaviani, both of the Oakland County Sheriff's Department. It also introduced five exhibits: (1) the Department's case report for the May 31, 2019 stop, (2) a copy of the Department's impound policy, (3) the impound slip for the car in which Edwards was a passenger, (4) dash-cam video from Hix's patrol car, and (5) video from the rear passenger seat of Flaviani's patrol car. Edwards did not call any witnesses or introduce any exhibits.

Now, having heard and observed the witnesses who testified at the evidentiary hearing, allowing for the Court to assess credibility, having considered the exhibits submitted by the parties,[1] having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.[2]

## FINDINGS OF FACT

On May 31, 2019, Sergeant Eric Hix was patrolling an area of Pontiac, Michigan in a fully marked patrol car. As he turned left onto Emerson Avenue, he passed a blue Chevrolet Impala that was stopped at a red light. Hix recognized the Impala's driver, Jacquan Fletcher, and the passenger, Defendant Terin Edwards.

Hix knew both Fletcher and Edwards. Hix had previously stopped Fletcher in that same Impala and recovered a handgun from under the passenger seat. In a separate incident, Fletcher had led Hix on a car chase that resulted in a crash and Fletcher's arrest after he continued the chase on

---

[1] Due to technical problems, the dash-cam video and rear-seat video were not played at the evidentiary hearing. However, the Court reviewed these videos, which were submitted by the Government in response to Edwards's motion.

[2] To the extent that a finding of fact is more properly a conclusion of law, and to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

2

foot. And Fletcher's name had come to Hix's attention again in the days leading up to May 31, 2019, when another officer informed Hix that Fletcher was somehow connected to an ongoing investigation. The officer had informed Hix that Fletcher was wanted on an outstanding warrant and that his driver's license was suspended.

Edwards had a similarly unpleasant history with Hix. Edwards's name had come up in several of Hix's investigations, and Hix was present when Edwards was arrested on a parole violation related to possessing a firearm. During the execution of that arrest, officers found a gun in Edwards's house.

Armed with the knowledge that Fletcher had an outstanding arrest warrant and was driving without a license, Hix turned his car around and began following the Impala. At this point, Hix had decided to stop the car and arrest Fletcher but, because of the men's criminal history, Hix did not want to make the stop and arrest on his own. He radioed for back-up and continued to follow the Impala.

Hix's plan to wait for backup was cut short when Fletcher turned into the parking lot of an apartment complex. Hix, uncomfortable with the idea of the men leaving the Impala, turned on his overhead lights. Immediately after the lights went on, Hix saw Edwards "dip" his shoulder, as if he was concealing or retrieving something from under his seat. This movement gave Hix a heightened level of concern for his safety.

Fletcher parked the Impala in the apartment complex's driveway. Hix left his patrol car and, as he approached Fletcher on the driver's side of the car, looked at Edwards diagonally through the rear window. He saw that Edwards's hands were empty. Hix informed Fletcher about why he had stopped the car, and Fletcher admitted that he had a suspended license and outstanding warrants.

3

Hix ordered Fletcher to step out of the car and placed him under arrest.

As Hix was arresting Fletcher, Edwards began grabbing at the door handle and asking whether he could or should leave the car. Hix told him to stay in the car and to keep his hands in sight. Despite these instructions, Edwards "bladed" away from Hix and Hix lost sight of his hands. Hix put his hand on his gun and ordered Edwards to stop moving.

At this point, other Oakland County Sheriff's deputies, including Deputy Flaviani, arrived on the scene. As Hix led Fletcher to his patrol car, he informed his fellow officers that he suspected that Edwards had hidden something under his seat. Deputies Wilson and Flaviani approached Edwards, ordered him to step out of the vehicle, and immediately handcuffed him. At the evidentiary hearing, Hix explained that Edwards was handcuffed for officer safety.

As Wilson led Edwards to a patrol car, Flaviani ducked his head into the car through the open passenger door. He immediately saw a handgun under the front passenger seat. At this point, Edwards was either being put in the backseat of a patrol car or had been already placed in the backseat of a patrol car. When the gun was found, roughly two minutes and fifteen seconds had elapsed from the initiation of the traffic stop, and roughly thirty five seconds had elapsed since Edwards had been handcuffed. The deputies placed Edwards under arrest for carrying a concealed weapon and for being a felon in possession of a firearm.

Hix determined that the Impala needed to be towed and impounded because it had been used in a crime, there was no available driver, and the car was blocking access to the apartment complex. The deputies searched all areas of the car to inventory its contents. During this search, a white SUV attempted to drive out of the apartment complex, but the driveway was blocked by the Impala. The SUV passed the scene by driving over a curb and onto the lawn.

**CONCLUSIONS OF LAW**

Edwards objects to his continued detention after Fletcher's arrest, to how he was detained, and to the search of the car. The Government responds that Edwards's detention was reasonable under the circumstances, that he lacks standing to challenge the search, and that, even if he had standing, the search was justified as a protective sweep and an inventory search.

### I. Edwards's Continued Detention

Edwards argues that the officers unreasonably prolonged the traffic stop by detaining him after its purpose had been completed. At the outset, the Court notes that Edwards does not challenge the constitutionality of the initial traffic stop. Edwards only argues that his continued detention after Fletcher had been arrested (including his handcuffing and placement in the back of the police car) unreasonably prolonged the traffic stop.

Hix testified, and the parties agree, that the initial purpose of the stop was to arrest Fletcher for driving without a license and to execute Fletcher's arrest warrants. After Fletcher was arrested, Hix must have had a "reasonable and articulable suspicion that criminal activity was afoot" to further detain Edwards. *United States v. Hill*, 195 F.3d 258, 263 (6th Cir. 1999) (*citing United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) (en banc)). Reasonable suspicion "requires more than a mere hunch, but is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard." *Dorsey v. Barber*, 517 F.3d 389, 396 (6th Cir. 2008). To determine whether the officers had a reasonable suspicion, the Court must examine whether they were aware of specific and articulable facts that gave rise to a reasonable suspicion. *United States v. Davis*, 514 F.3d 596, 607 (6th Cir. 2008). That determination is made in light of the "totality of the circumstances." *Id*. Relevant considerations

include the officer's observation that the detainee reached his hand out of sight, *United States v. Bost*, 606 Fed. App'x 821, 825 (6th Cir. 2015), the detainee's nervous, elusive behavior, *United States v. Pacheco*, 841 F.3d 384, 393 (6th Cir. 2016), and the officer's knowledge of the detainee's criminal history, especially when that history is specific and related to the same suspicions that the officer is developing. *United States v. Stepp*, 680 F.3d 651, 667 (6th Cir. 2012) (citing *United States v. Simpson*, 609 F.3d 1140, 1147 (10th Cir. 2010) and *United States v. Townsend*, 305 F.3d 537, 544-45 (6th Cir. 2002)). Further, officers may evaluate relevant considerations in light of their training and experience. *See United States v. McCauley*, 548 F.3d 440, 445 (6th Cir. 2008).

The Government argues that Hix developed a reasonable suspicion that Edwards had concealed a weapon based on (1) his observation that he had "dip[ped] his head and shoulders down as if reaching or hiding something under the seat" as the Impala was slowing to a halt, (2) his observation that Edwards was fidgeting while Fletcher was being arrested, and (3) his knowledge of Edwards's criminal history related to firearms. Accordingly, the Government contends that the brief detention of Edwards (i.e. handcuffing and placement in the back of a patrol car) was justified to investigate whether a weapon was in the car.

    **a.**    **Observation of Reaching**

The Sixth Circuit has recognized that further detention can be justified when the detainee has reached his hand out of sight during the course of the initial investigatory stop and that motion has made the officer concerned for his safety. In *Bost*, an officer pulled over a driver for an illegal lane change. 606 Fed. App'x at 822. The officer and the driver "conversed courteously" until the officer noticed that the driver had three cell phones. The officer asked the driver to step out of the car, but the driver did not immediately comply. Instead, he "put his hand between the center console and a

6

child's seat in the front of the car." *Id*. at 822. The officer pulled his gun on the driver and, after several seconds, the driver exited the car. The officer detained the driver and eventually found baggies of drugs on or near his person.

The driver was indicted on drug charges and moved to suppress the evidence obtained during the traffic stop. The district court denied the motion, and the driver appealed.

The Sixth Circuit affirmed the denial of this motion. The Sixth Circuit first noted that "the original purpose of the stop was to cite [the driver] for a traffic violation," and that "all of the officer's actions must be reasonably related in scope to circumstances justifying the original interference unless the officer has a reasonable suspicion that the individual has engaged in. . . criminal conduct that is more extensive than the conduct for which he is issuing the traffic citation." *Id*. at 824. (quotes omitted). Thus, the question became whether the driver's reaching constituted reasonable suspicion of criminal conduct. The Sixth Circuit concluded that it did, finding that "[s]uch a motion, it was reasonable to suspect, might constitute an attempt to destroy or conceal evidence of a crime or, more dangerously, to reach for a weapon." *Id*. at 825.

The Sixth Circuit then resolved an apparent tension in its case law by distinguishing ostensibly similar cases, including *United States v. Blair,* 524 F.3d 740 (6th Cir. 2008). *Id*. at 826. In *Blair*, the Sixth Circuit had concluded that the "act of reaching under the seats, without more does not justify a *Terry* Stop." *Blair*, 524 F.3d at 753. However, the *Bost* court concluded that *Blair*'s holding "is best read as denying that an officer who only observes a driver's nervousness can reasonably suspect that driver of *drug crimes*." *Bost,* 606 Fed.App'x at 826. (emphasis added). *Blair*, like other cases cited by the driver on appeal, "concerned [a] police officer obviously unconcerned for [his] safety." *Id*.

Here, Hix testified that he saw Edwards dip his head and shoulders, in a manner consistent with reaching under his seat. Hix also testified that this reaching caused him to be concerned for his safety because Edwards may have been retrieving or concealing a weapon. The Court credits this testimony. Thus, Edwards's reaching of his hand out of sight justified his further detention so that Hix could investigate whether he had hidden a weapon. *See Bost,* 606 Fed.App'x at 825 ("So Bost's reaching of his hand out of sight justified Officer Lane's subsequent patdown and further detention of Bost.")

### b. Edwards's Criminal History

The Sixth Circuit has also recognized that, "[a]lthough a person with a criminal record could not be. . . detained based on the record itself, such a record is one factor that may justify further detention and that may cast a suspicious light on other seemingly innocent behavior." *Stepp*, 680 F.3d at 667 (quoting *Simpson*, 606 F.3d at 1147)). Criminal history appears to be particularly instructive when it is "specific and related to the same suspicions that the officer was developing." *Id.*

Here, Hix knew about Edwards's history with guns and his past instances of possessing a gun as a convicted felon. He was present when Edwards was arrested for a parole violation related to possession of a firearm, and knew that a gun had been found during the course of that arrest. The specific nature of this criminal history properly shed a suspicious light on Edwards's actions during the traffic stop.

### c. Edwards's Movements during Fletcher's Arrest

"Furtive movements made in response to a police presence may also properly contribute to an officer's suspicions." *United States v. Caruthers*, 458 F.3d 459, 466 (6th Cir. 2006), *abrogated*

8

*on other grounds by Cradler v. United States*, 891 F.3d 659, 671 (6th Cir. 2018); *see also United States v. Keeling*, -- Fed.App'x --, 2019 WL 3731652 at *6 (6th Cir. Aug. 8, 2019).

Here, Edwards's conduct during Fletcher's arrest (i.e. grabbing at the door handle, repeatedly asking about leaving the car, turning away from Hix) properly contributed to Hix's reasonable-suspicion calculus and decision to detain Edwards after Fletcher's arrest was completed.

### d. Conclusion for Reasonable Suspicion Analysis

Considering Hix's observation regarding Edwards reaching under his seat, Hix's concern for his safety, Hix's knowledge of Edwards's criminal history related to guns, and Edwards's conduct during Fletcher's arrest, the Court concludes that the totality of the circumstances supported a reasonable suspicion that Edwards concealed a weapon under his seat. Accordingly, Edwards's continued detention was justified.

## II. How Edwards Was Detained

In Edwards's reply brief, he argues that the handcuffing and placement in the patrol car "exceeded the scope of a permissible *Terry* investigative detention." He then cites *United States v. Richardson*, 949 F.3d 851 (6th Cir. 1991).

In *Richardson*, the Sixth Circuit examined the differences between a *Terry* stop and an arrest, and noted that "when actions by the police exceed the bounds permitted by reasonable suspicion, the seizure becomes an arrest and must be supported by probable cause." *Id*. at. 856. In determining whether a *Terry* stop became an arrest, the Court must consider the scope and nature of the restraints placed on an individual's liberty. *Id*. The test is objective and the relevant question is "would a reasonable person in the defendant's position have felt that he was under arrest or otherwise deprived of his freedom of action in any significant way?" *Id*. (quotations omitted)

9

At first glance, Edwards appears to have been arrested: he was handcuffed and placed in the back of a patrol car. However, an "officer may take. . . precautions without exceeding the bounds of a *Terry* stop so long as those precautions are warranted by the facts." *United States v. Davis*, 533 Fed.App'x 576, 579 (6th Cir. 2013) (citing *United States v. Marxen*, 410 F.3d 326, 332 (6th Cir. 2005)); *see also Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 815 (6th Cir. 1999). "Such reasonable precautions include drawing and displaying weapons, the immediate removal of the occupants from the subject vehicle, and placing the occupants in handcuffs." *Marxen*, 410 F.3d at 332). "Further, detention in a police cruiser does not automatically transform a *Terry* stop into an arrest." *Houston*, 174 F.3d at 815.

The Court has concluded that there was a reasonable suspicion that Edwards was concealing a weapon. These facts warrant the precautions that were taken in this case. Deputies immediately removed Edwards from the car so they could distance him from where they suspected the gun was hidden, and they handcuffed him and placed him in the patrol car for officer safety. If Edwards was detained in this manner for a significant amount of time without any evidence of a weapon, the outcome here might be different. But he was handcuffed *for seconds* before Flaviani found the gun under his seat. The brief, reasonable measures used by the deputies here did not convert the investigatory detention into an unlawful arrest.

### III. Search of the Car

Edwards argues that the search of the car was unconstitutional because it was not a proper search incident to arrest and there was no reason to believe that a search of the car would uncover evidence of the suspected offense. The Government responds that Edwards—a passenger—does not have standing to challenge the search, that the search was justified as a protective sweep, and that

the search was done to inventory the car's contents in anticipation of impounding.

### a. Edwards's Standing

"Courts have routinely held that passengers who have no expectation of privacy or possessory interest in a stopped vehicle do not have standing to challenge the validity of a subsequent search of that vehicle on Fourth Amendment privacy grounds." *United States v. Bah*, 794 F.3d 617, 626 (6th Cir. 2015) (collecting cases). However, "[p]assengers have standing to contest the lawfulness of their seizure. . . and—in doing so—argue that evidence found during an ensuing vehicle search should be suppressed as fruits of illegal activity." *Id.* (citations and quotes omitted).

Thus, Edwards can only challenge the constitutionality of his detention, not the search of the car itself. Because Edwards does not challenge the propriety of the initial traffic stop, and because the Court has already determined that his continued detention was lawful, he cannot argue that the evidence found in the subsequent vehicle search should be suppressed as the fruits of illegal activity. In other words, the Court concludes that Edwards lacks standing to challenge the deputies' search of the Impala.

### b. Protective Search

Moreover, even if Edwards had standing to challenge the search, the Court concludes that it was a proper protective sweep. An officer may perform a protective sweep of the passenger compartment of a car if he has "a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officers in believing that the suspect is dangerous and the suspect may gain immediate control of the weapons." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983). "A search based on such reasonable suspicion is

permissible even if the suspect is detained outside the car because 'if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside.'" *United States v. McCraney*, 674 F.3d 614, 620 (6th Cir. 2012) (quoting *Long*, 463 U.S. at 1052). Whether such reasonable suspicion of danger existed is determined from examination of the individual factors under the totality of the circumstances. *Id.* (collecting cases).

As explained above, the Court concludes that the deputies had a reasonable suspicion that Edwards had hidden a weapon under his seat and that he would been able to gain immediate control of that weapon as long as he was in the car. Accordingly, search of the car was justified as a protective sweep.[3]

## CONCLUSION

Based on the totality of the circumstances, reasonable suspicion existed to believe that Edwards was armed or could gain immediate access to a weapon. This reasonable suspicion justified Edwards's detention after Fletcher's arrest and a protective sweep of the car. Moreover, as a passenger who was justly detained, Edwards lacks standing to move to suppress any evidence obtained during a search of the Impala. For these reasons, the Court **DENIES** Edwards's motion to suppress.

**IT IS SO ORDERED.**

s/Sean F. Cox<br>
Sean F. Cox<br>
United States District Judge

Dated: October 28, 2019

---

[3]Because of the Court's conclusions regarding reasonable suspicion and Edwards's standing, it need not determine whether the search was also justified as an inventory search.